STATE v. ARTHUR LEE.

(Filed 13 December, 1913.)

1. Spirituous Liquor—"Search and Seizure Act"—Possession—Principal and Agent—Interpretation of Statutes.

The General Assembly is presumed to have acted advisedly and with a knowledge of the legal meaning of the terms it employs in a statute. Hence, chapter 44, Laws of 1913, known as the "search and seizure act," making the "possession" of certain specified quantities of "spirituous, vinous, or malt liquors" *prima facie* evidence of its violation, intends that the "possession" shall be construed as either actual or constructive; so that the possession of such quantities by the agent will be deemed the possession of the principal for the purposes of the act.

2. Criminal Law — Trials — Warrants — Amendments—Intoxicating Liquors—"Search and Seizure Act."

Upon appeal, the Superior Court judge has authority, after the jury has been impaneled, to permit an amendment to a warrant issued under the "search and seizure law," being chapter 44, Laws 1913, so as to charge that the defendant had spirituous, etc., liquors "for the purpose of sale."

APPEAL by defendants from *Connor, J.,* at July Term, 1913, of WASHINGTON.

The defendant was tried and convicted under the Search and Seizure Law for having spirituous liquors in his possession for the purpose of sale, on a warrant issued by a recorder.

When the case was called for trial in the Superior Court, after the jury had been impaneled, the solicitor for the State moved that the warrant be amended by adding after the words, "spirituous liquors," the words, "for the purpose of sale." The motion was allowed, and the defendant excepted.

The evidence for the State tended to show that on 26 April, 1913, on the arrival at Plymouth of a train from Norfolk, Va., there was received at the Norfolk Southern Railroad station a trunk, afterwards found to contain forty half-pint bottles and four gallon jugs, containing whiskey. On the morning of its arrival the defendant gave a public drayman a check for the trunk and instructed him to get the trunk and take it to the home of his mother, and paid him for the service to be performed. The drayman went to the station and delivered the check and received the trunk. The trunk was seized by officers while still in possession of the drayman. When the officers went to the store of the defendant, he saw them coming, and walked hurriedly away.

The defendant moved for judgment of nonsuit, and by other exceptions presents the contention that the evidence does not show that the defendant was in possession of the liquor.

His Honor charged the jury, among other things: "That if the jury are satisfied by the evidence beyond a reasonable doubt that the trunk in evidence had been shipped to the defendant, and that a check had been sent to or received by him, which upon surrender to the railroad company entitled him to the possession of the trunk and its contents; that the defendant had delivered the check to Ballard, a drayman, with instructions from defendant to surrender the check and take the trunk to the home of Aggie Lee; that Ballard received the trunk and took it into his possession as agent for the defendant, and that while the trunk was in the actual possession of Ballard it was

under the control of and subject to the orders of the defendant, then the trunk was in the possession of the defendant, during the time that Ballard had it on his dray as agent for defendant, if the jury shall find from the evidence beyond a reasonable doubt that Ballard was the agent of the defendant." The defendant excepted.

Judgment was pronounced upon the verdict, and the defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*
*Ward & Grimes and P. H. Bell for defendant.*

ALLEN, J. The authority of his Honor to permit an amendment of the warrant is well settled. *S. v. Vaughan,* 91 N. C., 532; *S. v. Telfair,* 130 N. C., 645.

The other exception relied on by the defendant involves a construction of the language in the Search and Seizure Law (ch. 44, Laws 1913), "to have or keep in his, their, or its possession for the purpose of sale any spirituous, vinous, or malt liquors."

The contention of the defendant is that by "possession" is meant an actual possession, and that as the whiskey did not reach the defendant, and was seized in the hands of his agent, he is not guilty, and the statutory presumption from the possession of more than one gallon cannot arise.

The Search and Seizure Law has been upheld as valid and constitutional in *S. v. Wilkerson, ante,* 431, and if we were to sustain the position of the defendant, an act passed to secure the enforcement of the laws against the sale of intoxicating liquors, instead of effecting its purpose, would be a shield and protection to the principal offenders against the law. Intoxicating liquors intended for sale would not hereafter come into the actual possession of the owner, but would be left with an agent, and the moving party and instigator of violations of law would frequently escape punishment.

We are not, therefore, inclined to give to the statute this restricted construction, and the language used does not require us to do so.

The act says "the possession of," which includes actual and constructive possession, and as the General Assembly is presumed to have acted advisedly and with a knowledge of the legal meaning of the term, we are not at liberty to amend the act by inserting before the word "possession" the word "actual."

We find no direct authority upon the question, here or elsewhere; but the decisions upon statutes making it indictable to have counterfeit money or burglar's tools in possession furnish a complete analogy.

It was held in *Reg. v. Williams,* 1 Car. and Marsh, 259 (41 E. C. L., 145), that, "In order to convict a person charged on the stat. 2 Will. IV., ch. 34, sec. 8, with having in his possession more than three pieces of counterfeit coin, with intent to utter them, it is not necessary that the possession should be individual possession, but it is enough if the coin be in the possession of the person charged, or his immediate agent"; in *S. v. Washburn,* 11 Iowa, 245, that coin deposited in a secret place was in possession of the defendant, and that "if the coin was within the power of the prisoner, in such sense that he could and did command its use, the possession was as complete, within the meaning of the statute, as if it had been actual"; and in *S. v. Potter,* 42 Vt., 495, that burglar's tools left by the husband with the wife were in possession of the husband, the opinion being based on the general law, and not on the marital relationship.

Again, in McLean Crim. Law, vol. 2, sec. 785: "The possession may be sufficient, although the counterfeit coin is deposited in a secret place, provided it is within the knowledge and control of the accused; and even though acquired by the accused with the knowledge of the police and immediately afterwards seized so that there could not have been any opportunity for making a fraudulent use thereof. . . . There may be a joint possession where two or more persons are acting in concert in the having and intending to pass, and the possession may be by an agent."

The reasoning in *S. v. Stroud,* 95 N. C., 631, is also pertinent and persuasive. In that case the defendant was charged with receiving stolen goods, and the point was made that the defend-

ant could not be convicted because he was not in actual possession of the goods; but the Court refused to give its assent to this position, and said: "To constitute the criminal offense of *receiving,* it is not necessary that the goods should be traced to the actual personal possession of the person charged with receiving. It would certainly make him a *receiver* in contemplation of law if the stolen property was received by his servant or agent, acting under his directions, he knowing at the time of giving the orders that it was stolen, for *qui facit per alium facit per se.* It is the same as if he had done it himself."

We are, therefore, of opinion, on reason and authority, that the evidence was sufficient to establish the fact of possession within the meaning of the statute, and that this possession made out a *prima facie* case against the defendant.

His Honor charged the jury as to the effect of the *prima facie* case in accordance with the opinion of this Court in *S. v. Wilkerson, ante,* 431, and *S. v. Russell, ante,* 482.

No error.