STATE OF NORTH CAROLINA v. ERIC JEROME MOORE

No. 347A84

(Filed 8 January 1985)

**Robbery § 4.7— armed robbery—evidence showing opportunity—insufficiency to support conviction**

The State's evidence disclosed no more than an opportunity for defendant, as well as others, to have taken the victim's wallet containing money and was insufficient to support his conviction of armed robbery where it tended to show that defendant, with the aid of a long knife, sexually assaulted the victim in the bathroom of a store where she worked alone shortly after 1:00 p.m.; the victim stayed in the bathroom for 20 minutes after defendant left; the victim was gone from the store for some two hours after the attack while she was calling and conferring with the police; when the victim returned to the store, she discovered that her wallet was missing from her purse; when the victim had arrived at work around 10:00 a.m. the morning of the attack, she had placed her purse containing a wallet with $30 in it on a stool behind the

cashier's counter; and other customers had been in the store between 10:00 a.m. and the time of the sexual assault.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL pursuant to N.C.G.S. § 7A-27 by defendant from a verdict of guilty of first degree sex offense and a judgment imposing life imprisonment. This Court granted defendant's motion to bypass the Court of Appeals on his conviction of attempted first degree rape and robbery with a dangerous weapon and judgments sentencing him to six years' and fourteen years' imprisonment, respectively. The judgments were entered by *Judge Hal Walker* at the 5 March 1984 Criminal Session of Superior Court of GUILFORD County.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General,* for the state.

*Ann B. Petersen* for defendant appellant.

EXUM, Justice.

The only assignment of error brought forward in defendant's brief is whether the state presented sufficient evidence to justify the trial court's submitting to the jury the armed robbery charge (No. 82CRS35339 in superior court).[1] We conclude that it did not. We therefore reverse defendant's armed robbery conviction. Defendant having abandoned all assignments of error in the sex offense case (No. 82CRS35338 in superior court) and the attempted rape case (No. 82CRS35337 in superior court), App. R. 28(a), the appeal in these cases is dismissed.

I.

On Friday, 19 February 1982, Lisa Burton was working alone in the Old Arlington Dry Goods Store in Greensboro. Although the store was open for business, both the front and back doors to the store were locked. Burton said, "The front door was always kept locked as a security reason because of the part of town" in

---

1. Although defendant assigned errors affecting all three judgments, he has brought forward in his brief only the assignment dealing with the sufficiency of the evidence on the armed robbery charge.

which the store was located. Burton's practice was to unlock the front door and admit customers only after she had first observed them through the front window. Around 1 p.m., Burton unlocked the back door and went outside to walk her dog. While descending the back steps, she was approached by a man who began asking her questions about the shop and, in particular, about the availability of bedspread material and quilts. Not wanting to deal with him, she informed him the store was closed and that he should come back next week. The man persisted, finally telling Burton he wanted to show her a picture of "what he was trying to find." He then showed Burton an obscene picture of a naked woman. Burton grabbed her dog and ran back into the store. Her assailant entered the store behind her before she could close and lock the door. He then backed Burton against a wall, produced a long knife, and ordered her into the bathroom. He told Burton not to move and left the bathroom, closing the door behind him. Burton's attacker returned after about a minute and sexually assaulted her.[2]

He then ordered Burton to get dressed, asked her what was upstairs in the store and left, again closing the bathroom door behind him. He returned after about three minutes and asked Burton whether she was going to tell on him to which she responded negatively. Burton's attacker then left again, without telling her whether he planned to return. Burton waited in the bathroom approximately twenty minutes. When she could no longer hear him moving about the store, she left the bathroom and ran out the back door of the store. Burton left the store at approximately 1:30 p.m.

Burton testified at trial that when she arrived at work around 10 a.m. the morning of her attack, she placed her purse on a stool behind the cashier's counter at the front of the store. The purse contained a wallet with approximately $30 and some credit cards inside. She also testified that at least one, and perhaps as

2. Defendant was initially convicted of first degree sex offense, attempted first degree rape and robbery with a dangerous weapon at the 13 September 1982 Criminal Session of Guilford County Superior Court before Judge Washington. This Court ordered a new trial because of evidentiary errors. *State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542 (1983). A more complete statement of the facts pertinent to the sexual assaults may be found in our first opinion.

many as two or three customers had been in the store since 10 a.m. When Burton returned to the store with police officers after the attack, her purse was there but the wallet was missing.

It is not entirely clear how much time elapsed from the attack until investigators first arrived at the scene of the crime. It is clear, however, that some two hours elapsed between the attack and the time Burton herself returned to the store and discovered the wallet was missing. Burton testified at trial that after the attack she ran out the back door of the store to a nearby antique store which she discovered was closed for lunch. She then ran to an adjacent insurance company and asked a secretary to call police. She testified that police first arrived at the insurance company ten minutes after being summoned.

The investigating officer testified that "after approximately 30 minutes of calming her [Burton] down, I was able to talk with her and get a description." Burton finally accompanied officers back to the store two hours after the attack before going on to the police station. She testified, however, that "there were police in the building . . . almost that whole time." Burton said she knew about this only because police told her they had already been to the store, although she did not know which officers had been there or when they entered the store.

Burton testified that she had ample opportunity to observe her assailant's face since her attack occurred on a bright sunny day and lights were on inside the store. Burton identified defendant as her assailant first in a photographic lineup, later from among thirty to forty men seated in a Guilford County courtroom, and finally at trial. Defendant was also identified by Howard Stone who did odd jobs for the owner of the store. Stone testified that he had seen defendant around the store several times and that he saw defendant running from the back of the store on 19 February 1982, the day of the attack.

II.

Defendant's sole contention is that the evidence offered by the state at trial to support the charge of robbery with a dangerous weapon was insufficient to carry the charge to the jury. We agree.

The robbery charge arises from the theft of Mrs. Burton's wallet on the day of her attack sometime between 10 a.m. when she placed her purse on a stool behind the cashier's counter and her discovery that the wallet was missing some two hours after her encounter with defendant. Defendant contends that the state's evidence was insufficient to prove beyond a reasonable doubt that he, and not someone else, took the wallet.

To sustain the submission of a criminal charge to a jury, there must be substantial evidence of each element of the offense charged *and* of defendant's identity as the perpetrator. *State v. Riddle*, 300 N.C. 744, 268 S.E. 2d 80 (1980). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980). The evidence must be viewed in the light most favorable to the state and the state is entitled to every reasonable inference that can be drawn from the evidence. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (984); *State v. Lowery*, 309 N.C. 763, 309 S.E. 2d 232 (1983). It is well settled, however, that evidence which is "sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it will not support a conviction." *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982); *State v. Glenn*, 251 N.C. 156, 110 S.E. 2d 79 (1959).

When measured by these standards, the evidence here was insufficient to carry the charge of armed robbery to the jury. Even when considered in the light most favorable to the state and giving the state all reasonable inferences therefrom, the evidence at most creates suspicion that defendant was the perpetrator of this offense.

This Court considered a similar challenge to the sufficiency of the state's evidence in *State v. Murphy*, 225 N.C. 115, 33 S.E. 2d 588 (1945). There, two defendants appealed the trial court's refusal to grant a nonsuit regarding a robbery charge. The evidence showed that the victim had been assaulted by defendants and left unconscious in the street. Two women came along soon after the attack and placed the victim on a nearby porch where he remained for about ten minutes until he regained consciousness. Later, while proceeding homeward on his bicycle, the victim discovered that $82 which had been in his pocket at the

time of the assault was missing. In reversing the trial court's refusal to grant a nonsuit, this Court held that a charge may go to the jury if there is any evidence which proves the fact in issue or "which reasonably conduces to its conclusion as a fairly logical and legitimate deduction," but not where the evidence merely raises a suspicion or conjecture. *Murphy* at 116, 33 S.E. 2d at 589. In applying these principles to the facts of *Murphy*, the Court said:

> We are of the opinion that the evidence discloses no more than an opportunity for the defendants to take the money. And the evidence shows an equal opportunity for others to have taken the money. Under such circumstances to find that any particular person took the money is to enter the realm of speculation, and verdicts so found may not stand.

*Murphy* at 117, 33 S.E. 2d 589.

Similarly, in *State v. Holland*, 234 N.C. 354, 67 S.E. 2d 272 (1951), the victim was struck in the head with an iron pipe by a passenger in his cab. He was found unconscious in his own bed seven hours later and transported to the hospital. When he awoke eight days later, he found that approximately one-half of the one hundred dollars he was carrying at the time of the assault was missing. In reversing the trial court's refusal to grant nonsuit, the Court held that while the evidence of assault suggested a motive for robbery, the evidence disclosed no more than an opportunity for defendants to have taken it with equal opportunity for the money to have disappeared in other ways.

In the case *sub judice*, the evidence is that although defendant had an opportunity to take Burton's wallet, others might also have had an opportunity during the times (1) Burton waited on customers before the assault, (2) Burton was in the bathroom with the door closed and (3) Burton was away from the store calling and conferring with the police. We think this last period of time is particularly significant. Even if, as Burton testified, police were in the building before she returned some two hours after the assault, approximately forty to forty-five minutes elapsed from the time Burton left the store until police arrived at the insurance company and were able to calm her down enough to determine what had happened. During this time the store was

unattended and the back door unlocked. Anyone in the vicinity—a vicinity in which Burton's sense of insecurity caused her to keep the store's *front* door locked during business hours—could have entered the store during this time and taken the wallet.

The evidence, like that in *Murphy* and *Holland*, discloses no more than an opportunity for defendant, as well as others, to have taken the money. It is, therefore, insufficient under these authorities to sustain defendant's conviction of robbery with a dangerous weapon. Defendant's motion at the close of the evidence to dismiss this charge should have been allowed. Defendant's conviction of this offense in superior court case No. 82CRS35339 is, therefore, reversed.

In No. 82CRS35339—reversed.

In Nos. 82CRS35337 and 82CRS35338—appeal dismissed.

Justice VAUGHN did not participate in the consideration or decision of this case.